Opinion delivered March 1, 1884.

---

[No. 1630.]

## W. H. CASTELLOW *v.* THE STATE.

1. THEFT—FACT CASE.—See the inculpatory evidence summarized in the opinion and *held* to be insufficient to sustain a conviction for cattle theft.
2. SAME—EVIDENCE—POSSESSION OF STOLEN PROPERTY RECENTLY AFTER THE THEFT, when the possessor's opportune explanation was ignored and excluded by the trial court, is not sufficient to sustain a conviction for theft.   The fact that he had given a previous explanation of his possession did not make his opportune explanation inadmissible, whether or not he had parted with the possession when he had occasion to explain it.

:3. SAME—CASE STATED.—In a trial for theft of a cow, the State proved that,
soon after the theft, the stolen cow was found on the defendant's prem-
·ises, and was then necked to an ox, which ox he claimed at the time he·
was arrested for theft of the cow. Defendant proposed, but was not al-
lowed, to prove, on cross-examination of the State's witness, the explana-
tion given by him to the witness, at the same time, of the fact that the
stolen cow was necked to the ox claimed by him. *Held*, error. See the
·opinion for the reasons.

APPEAL from the District Court of Lavaca. Tried below be-
fore the Hon. Everett Lewis.

The indictment charged that the appellant, on July 7, 1883,
wilfully, unlawfully, fraudulently and feloniously, did take,
:steal and carry away from the possession of M. and M. Murphy
a cow which was the property of said M. and M. Murphy. The.
jury found him guilty, and assessed his punishment at a term
of two years in the penitentiary. The material facts are stated
in the opinion of this court.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for the theft of a cow, the
property of Mike and Mat Murphy, the penalty awarded being
two years in the penitentiary. For conviction, the State relied
upon possession by the defendant recently after the theft.

The cow was found on the defendant's premises, necked to an
·ox which belonged to the defendant. The defendant lived in
an open country and on a public road. Upon the cow was an
.apparently fresh brand. This brand was not the brand of
the Murphys, nor does it appear from the evidence that it was
the brand of the defendant. The evidence does not disclose
what this brand was, nor what brand was claimed by the de-
fendant. Some ten or twelve days before Murphy and sheriff
Smithers found the cow necked to the ox of the defendant, F.
W. Newhaus informed John Godez that he had lost a cow an-
.swering the description of the one necked to the ox, and asked·
him to look out for her. Godez was of the impression that he
mentioned this to one Riley, and he supposed that Riley told
the defendant. Castellow, the defendant, sent for the witness
Godez to come and see the cow. The defendant told the witness

that the cow had been left in his pasture by a drover, because she was lame, and requested the witness to tell Newhaus if the cow was his to come and prove and take her; that he, the defendant, had no claim to her. The defendant called the witness's attention to the brand, and asked him if he thought it was or had been run over.

About ten or twelve days after this the sheriff went to the house of defendant, or where he lived. About two hours after supper the witness (the sheriff) heard the sound of two horses running. At this time witness and defendant were sitting on the gallery. Soon after hearing these horses running, some cattle ran past the gate up to the horse lot. With those cattle were the ox and cow, necked together. They laid down and there remained until the next morning. After breakfast next morning, Campion and Murphy rode up, and these parties, accompanied by defendant, went to where the ox and cow had grazed off. The defendant claimed the ox.

These facts are relied upon by the State to prove that defendant was in possession of the cow. That he was at that time in possession of the cow is beyond question. By the sheriff the State proved that defendant claimed the ox to which the cow was necked.

Upon cross-examination, counsel for defendant asked the witness if defendant said anything else when he claimed the ox; to which he replied that he did. Counsel requested the witness to state what he said. To this question the district attorney objected, and the court sustained the objection; and the defendant excepted and reserved his bill.

That defendant had the right to introduce what he said explanatory of his possession, there cannot be a doubt. The State relied upon this possession as a criminative fact. What was said by defendant explanatory of this fact has, we believe, ever been held admissible.

The learned judge explains his ruling upon this question; which explanation is that, as defendant had prior to this given an explanation of his possession, he could not be permitted to explain but once. We are not aware of a rule of law which confines a party to but one explanation. If the State relies upon the fact that the defendant was in possession of the stolen property at different times, defendant has the right to introduce his explanations made at each time. When an act is done, and this act is sought by the State to be used as a criminative cir-

cumstance against the party doing the act, what the party said at the time is always admissible for or against him.

This court has held, and from the present lights expects to hold, that when a party is found in possession of property recently after it was stolen, and is charged with the theft, or an explanation is directly or circumstantially demanded, and he stands mute, attempts no explanation at the time, that he would not be permitted afterwards, having parted with the possession, to introduce in evidence an explanation afterwards made. Mr. Wharton, in his work on Criminal Evidence, says: "Declarations made by a defendant in his own favor, unless part of the *res gestœ* or of confessions offered by the prosecution, are not admissible for the defense." Unless part of the *res gestœ* of what? The main fact, or any admissible fact? Most evidently of either. For in Article 761 the same author says: "What the defendant said on the discovery of the goods is admissible in his favor, if made instantaneously and without opportunity of concoction, as part of the *res gestœ*." It will be seen from this author that the explanation must be made instantaneously, and without opportunity of concoction. We have held that a party, when the State relies upon recent possession, though he has parted with the possession, may in some cases nevertheless give in evidence his explanation of his possession.

Let us illustrate: On the first day of January a horse is stolen by some person. On the tenth day the defendant is seen riding the horse along the public road. On the twentieth the horse is sold to a party and taken out of the county. When seen in possession of the horse there was nothing said to the defendant relating to the horse. Defendant's possession was not mentioned or questioned in any manner. On the twenty-fifth of the same month defendant was arrested for the theft of the horse, and when arrested he was charged with the theft, and was informed that he had been seen in possession of the horse. He explains his connection with the horse. Are his explanations evidence for him? Can he introduce them, they being made when he was first called upon for an explanation? We hold that he can.

But let us return to the question. Did the court err in refusing to permit the defendant to introduce his explanations made at the time the sheriff and others went with defendant to where the cow and oxen were grazing, the cow being necked to the ox? These facts were proven by the State. Not only so, but the State proved that then and there the defendant claimed the ox,

thus establishing possession of the cow in defendant. The question is, was what was said by defendant, explanatory of the fact that this stolen cow was necked to his ox, admissible in his behalf ? We have no doubt of its admissibility on two grounds:

1.   The prosecution proved that the defendant claimed the ox. The cow was necked to the ox. As part of the claim—*res gestœ,* so called—what was said by defendant relating thereto was admissible.

2.   By these facts the prosecution proved the fact that defendant was in possession of the cow. This was an act, and what was said at the time, the defendant being called upon by the surrounding facts to speak, explanatory of this act, was clearly admissible.

But how stands the case viewed in the light of the evidence for the prosecution ? It is simply this: Defendant is found in possession of a cow which had been stolen by some person, recently after the theft. And by the State it is shown that he gave a natural and reasonable account of his possession. There is no pretense that he gave inconsistent and conflicting accounts of this matter. But if we are left to presumption, we would infer that if he had been permitted, he would have given the same or at least a reasonable account of his possession of the cow. This, however, he was not permitted to do.

Again, as the State had proved that defendant made an explanation which was quite reasonable, the fact that he at another time gave another and inconsistent account of his connection with the cow was of the greatest importance to the State. Hence the inference is strengthened that the rejected explanation was favorable to the defendant. But what have we in this case, as it stands, save recent possession with a reasonable explanation ? Nothing whatever. There is not the slightest effort in the record to disprove the account given by defendant.

It may be insisted, however, that there are very suspicious circumstances developed by the evidence of the sheriff. What are they ? If they had any connection with the cow we have been unable to discover it. That the sheriff heard the noise of the running of horses and whistling and singing at times of night which were unusual and suspicious may be true. But what had all this to do with the defendant and his connection with the cow ? Nothing whatever. This is evident from the plain and simple fact that the cow necked to defendant's ox by

some one was driven to the lot near the house, laid down and there remained until next morning.

There being no fact tending in the remotest degree to connect the defendant with the theft of the cow, save his possession, and this being explained by the defendant, with no attempt on the part of the prosecution to show the explanation to be false, this conviction cannot be sustained. It is not supported by the evidence, and for this reason the judgment is reversed.

We cannot revise the action of the court in rejecting the explanations of the defendant, because the bills of exceptions do not set out what was proposed to be proved by the witnesses— what the explanation was. It may or may not have been reasonable. If reasonable, its rejection was error. If unreasonable its rejection was error, but not injurious to defendant. If, however, the bills or either of them had set forth what was said by defendant, and it had been made to appear that a reasonable account of his connection with the cow was given, we would have been compelled to reverse the judgment for this error. These things, however, do not appear by either bill of exceptions; hence, it does not appear to this court that defendant has been injured in this matter.

Because the verdict of the jury is not supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*